IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  13-cv-00827-LTB

MICHAEL GENE MEREDITH,

        Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

        Defendant.

_____

ORDER
_____

Plaintiff, Michael Gene Meredith, appeals from the Social Security Administration

Commissioner's (the "Commissioner") final decision denying his application for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), filed pursuant to Titles

II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-1383c.

Jurisdiction is proper under 42 U.S.C. § 405(g).  Oral argument will not materially aid in

resolving this appeal.  After considering the parties' arguments and the administrative record, for

the reasons below, I affirm the Commissioner's final order**.**

## I.  STATEMENT OF THE CASE

Plaintiff initially filed applications for SSI and DIB on November 21, 2009, alleging that

he had been disabled since August 27, 2009.  [Administrative Record ("AR") Doc. # 10-5, 2-5].

These claims were initially denied by an Administrative Law Judge ("ALJ") on August 31, 2009.

[*Id*. at 10-3, 2-12].  Plaintiff did not request further review of this decision, making this

determination final.  [*Id.* at 10-2, 22].  Plaintiff then filed two additional applications for SSI and

DIB on January 22, 2010.  [*Id.* at 10-5, 3-7].  Because the decision as to Plaintiff's disability

through August 31, 2009 was final, review of Plaintiff's second set of applications is limited to whether Plaintiff has been under disability since September 1, 2009. [*Id.* at 10-2, 22]. Plaintiff's January 22, 2010 applications were initially denied at the administrative level. [*Id.* at 10-3, 16-35].

An ALJ subsequently conducted a hearing on July 13, 2011 (*id.* at 10-2, 31-52), and issued a written ruling on October 28, 2011 (*id.* at 18-30). The ALJ denied Plaintiff's application on the basis that he was not disabled during the relevant time period because he could perform past relevant work and in the alternative that Plaintiff could perform work in the national economy given his residual functional capacity ("RFC"), age, education, and work experience. [*Id.* at 28-30]. Plaintiff appealed the denial of his application to the Social Security Administration Appeals Council ("Appeals Council"). [*Id.* at 10-4, 10-11]. On January 25, 2013, the Appeals Council declined to review the decision of the ALJ, making the denial final for the purpose of judicial review. [*Id.* at 10-2, 2-6]. In denying review, the Appeals Council informed Plaintiff that it "considered the reasons [Plaintiff] disagree[d] with the decision and the additional evidence listed on the enclosed Order of Appeals Council. [It] found this information does not provide a basis for changing the Administrative Law Judge's decision." [*Id.* at 2-3].

Plaintiff timely filed his Complaint with this Court seeking review of the Commissioner's final decision. [Doc. # 1].

## II.  FACTS

The facts are largely undisputed and extensively provided in the ALJ's order. As such, I provide a limited factual background as relevant here.

A.    **Background**

Plaintiff was born on July 21, 1979, was 30 years old on his alleged onset date of August 27, 2009, was 30 at the start of the relevant time period, and was 32 at the time of the ALJ's decision.  [AR Doc. # 10-3, 16].  He has a high school degree and is able to communicate in English.  [*Id.* at 10-2, 28].  His past relevant work history includes tech support, accounts receivable clerk, computer technical support, scorekeeper, caretaker of facilities, furniture delivery/set up, and trainer/assistant manager for fast food service.  [*Id.* at 10-2, 47-48].  Pursuant to 20 C.F.R. § 404.130, in order to be eligible for benefits, Plaintiff must prove that his disability began before the date through which he remained insured, which in this case was December 31, 2011.  [*Id.* at 22].  Thus here, the relevant time period for determining disability is September 1, 2009, through the date of the ALJ's decision, October 28, 2011.  [*See id.*]; 20 C.F.R. § 404.130.  During the relevant time period Plaintiff was not engaged in substantial gainful activity.  [*Id.* at 10-2, 24].

B.    **Medical Evidence**

From October 2008 to May 2011, Plaintiff saw Frank Polanco, M.D., at Healthquest Medical Inc. for recurring complaints of severe and constant pain in his neck and low back following a December 2005 motor vehicle accident.  [*Id.* at 10-7, 11-38].  To help with Plaintiff's reports of pain, Dr. Polanco prescribed Vicodin, Soma, and Ibuprofen.  [*Id.* at 30].  Plaintiff saw Dr. Polanco on and off approximately once per month and continually reported significant neck and back pain, which he rated within a range of 6 to 9.5 on a scale of 1 to 10.  [*Id.* at 11-38].

In June 2009, Plaintiff began pain management treatment with Ronald Laub, M.D. at Interventional Pain Management.  [*Id.* at 2-10].  Dr. Laub reviewed MRI reports, which the doctor noted showed some degenerative disc disease in both the low back and neck, disc bulges in the neck and back, but no narrowing (stenosis) of the spine.  [*Id.*]  On examination, Plaintiff's low back was not tender to palpation, and his strength, sensation, and reflexes were normal in both the arms and legs.  [*Id.* at 5].  Dr. Laub noted that Plaintiff had "some high pain behavior," such as "sighing when changing position," and had back pain with straight leg raising.  [*Id.*]

After examining Plaintiff and reviewing his MRI, Dr. Laub noted that there was a "lack of identifiable sources of pain."  [*Id.*]  The doctor also administered at Brief Battery for Health Improvement II test, which is "designed to screen for psychological factors that would complicate a patient's condition and to judge a patient's responsiveness to rehabilitation and recovery."  *Beaulieu v. Astrue*, No. 10-81209-CIV, 2011 WL 4542546, at *2 (S.D. Fla. Sep. 12, 2011) (unpublished).  Dr. Laub reported that the results demonstrated "high somatic complaints, moderate high pain complaints, extremely high functional complaints, very high depression, and high anxiety."  [*Id.*].  Dr. Laub indicated that Plaintiff's behavior could be "secondary to his pain condition or may represent somatoform disorder."  [*Id.*]

After applying for benefits, when investigating whether Plaintiff qualified for benefits, the Social Security Administration attempted to send Plaintiff to a psychological consultative examination.  [*Id.* at 10-3, 29].  The notice was returned undeliverable and Plaintiff never attended a psychological consultative examination.  [*Id.*; *id.* at 10-6, 56-70].  Donald Glasco, M.D., then reviewed the record and opined that there was insufficient evidence to evaluate the claim.  [*Id.* at 10-3, 30].

**B.**     **Plaintiff's Disability Hearing**

During the ALJ's hearing on July 13, 2011, Plaintiff testified that he lived with his father, his stepmother, his fiancé, and his fiancé's four-year-old child.  [*Id.* at 10-2, 35].  He stated that during the day he and his fiancé took care of her child while his father and stepmother worked.  [*Id.*]   He provided that he had a drivers' license and drove a couple of times a week, usually to the store to go grocery shopping.  [*Id.* at 36].  Plaintiff also worked part time as an at-home customer support representative for X-Box.  [*Id.* at 36-37].  When he was not working, Plaintiff reported that he watched Netflix (television or movies) or played video games.  [*Id.* at 41].

Plaintiff testified that his primary problem was chronic pain in his back and neck and claimed that he would periodically have difficulty concentrating due to this pain.  [*Id.* at 39-40].  He described taking Vicodin, ibuprofen, and soma to help him function.  [*Id.*]   He reported that in his at-home customer service work he was able to concentrate for four-hour shifts with a ten-minute scheduled break and two or three extra two-minute breaks.  [*Id.* at 41].   He also stated that he could sit 20 to 30 minutes at a time, but would then need to stand for a couple of minutes and could stand for 30 minutes at a time and walk a block or two.  [*Id.* at 43].   Plaintiff stated that his pain levels were typically a 7 on a scale of 1 to 10, that he could not bend over or squat, and that without medication he could not focus for more than one hour.  [*Id.* at 44-46].

A Vocational Expert ("VE") also testified at the ALJ hearing.  [*Id.* at 46-52].  The ALJ asked the VE if an individual could complete any of Plaintiff's past work with the same age, educational background, and work experience as Plaintiff who was limited to a light exertional level with the following limitations: could sit, stand, and walk six hours per day, but needed to be able to alternate between sitting and standing at will; could not climb ladders, ropes, or

scaffolds; he could occasionally climb stair and ramps, stoop, crouch, crawl, kneel, and reach overhead; and he needed to avoid concentrated exposure to cold, vibration, and unprotected heights.  [*Id.* at 49].  The VE responded that such an individual could still work in accounts receivable, as a scorekeeper, and in computer technical support.  [*Id.* at 49].  The ALJ then asked the VE if there were other jobs such an individual would be capable of performing.  [*Id.*]  The VE responded that such an individual could work as a ticket taker, a cashier in a gas bar island, and a cashier at a convenience store.  [*Id.* at 50].  The ALJ next asked the VE if there was any inconsistency between the provided RFC and the identified jobs, to which the VE responded that there was not.  [*Id.*]

### III.  LAW

To qualify for benefits under sections 216(I) and 223 of the SSA, an individual must meet the insured status requirements of these sections, be under age 65, file an application for DIB and/or SSI for a period of disability, and be "disabled" as defined by the SSA.  42 U.S.C. §§ 416(I), 423, 1382.  Additionally, SSI requires that an individual meet income, resource, and other relevant requirements.  *See* 42 U.S.C. § 1382.  A Five-Step sequential evaluation process is used to determine whether a claimant is disabled under the SSA, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).

Step One asks whether the claimant is presently engaged in substantial gainful activity. If he is, benefits are denied. *See* 20 C.F.R. § 404.1520. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments, as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible. *See* 20 C.F.R. § 404.1520(c). Step Three then assesses whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the impairment is not listed, he is not presumed to be conclusively disabled. Step Four then requires the claimant to show that his impairment(s) and assessed RFC prevent him from performing work that he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. *See* 20 C.F.R. §§ 404.1520(e), (f). Finally, if the claimant establishes a *prima facie* case of disability based on the previous four steps, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. § 404.1520(g).

## IV. ALJ's RULING

The ALJ found that Plaintiff had met the insured requirements of the SSA through December 31, 2011. [AR Doc. # 10-2, 24]. He ruled that Plaintiff had not engaged in substantial gainful activity since September 1, 2009, through the date of the ALJ's decision, October 28, 2011. [*Id.*] The ALJ found that through the date of his decision, the Plaintiff had the following sufficiently severe impairments: degenerative changes of the cervical and lumbar spine (Step Two). [*Id.*] However, the ALJ then determined that Plaintiff did not have an

7

impairment, or combination of impairments, that met or medically equaled one of the listed impairments (Step Three) in 20 C.F.R. Pt. 404, Subpt. P, App. 1. [*Id*. at 25]. Because the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment, he then assessed Plaintiff's RFC. [*Id*. at 25-28].

The ALJ evaluated the evidence and found that through the date last insured, Plaintiff had the RFC to perform work light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.97(b), with the following exceptions:

> [Plaintiff] be allowed to alternate from sitting to standing, as needed; there would be no climbing of ladders, ropes or scaffolds and occasional climbing of stairs and ramps, stooping, kneeling, crouching and crawling; there should be occasional over the shoulder, or overhead, reaching, not to exceed the light exertional range; he should avoid concentrated exposure to cold, vibration and unprotected heights.

[*Id*. at 25]. The ALJ concluded at Step Four that Plaintiff was able to perform his past relevant work as an accounts receivable clerk (Step 4), and in the alternative concluded that there were other jobs existing in the national economy that Plaintiff was able to perform (Step Five). [*Id*. at 28-30]. Consequently, the ALJ concluded that Plaintiff was not disabled between his alleged onset date and the date last insured. [*Id. at* 30].

## V.  STANDARD OF REVIEW

I review the Commissioner's decision (expressed here as the ruling of the ALJ) "to determine whether the factual findings are supported by substantial evidence in light of the entire record and to determine whether the correct legal standards were applied." *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003). My review of the factual findings is to determine whether they, "are based upon substantial evidence, and inferences reasonably drawn

therefrom.  If they are so supported, they are conclusive upon the reviewing court and may not

be disturbed."  *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).  "Substantial

evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (quotations omitted).  It

requires "more than a scintilla but less than a preponderance."  *Zoltanski v. F.A.A.*, 372 F.3d

1195, 1200 (10th Cir. 2004).

## VI.  APPEAL

Plaintiff challenges the ALJ's determinations at Steps Four and Five.  First, Plaintiff

contends that the ALJ did not adequately develop the record.  Second, Plaintiff contends that the

ALJ erred in his RFC analysis and this error improperly led to the ALJ concluding that Plaintiff

could perform his past relevant work as an accounts receivable clerk.  Third, Plaintiff challenges

the ALJ's determination that there were other jobs existing in the national economy that Plaintiff

was able to perform.

**A.      ALJ's Development of the Record**

Plaintiff contends that the ALJ did not adequately develop the record to support his

conclusions.  It is the Plaintiff's burden to prove that he is disabled.  *Hawkins v. Chater*, 113

F.3d 1162 (10th Cir. 1997).  However, the agency also has a duty to ensure that the record is

adequately developed.  *See* 20 C.F.R. § 404.1512(d).  Thus, if the evidence the claimant submits

is insufficient to determine whether a claimant is disabled, the agency will try to resolve the

insufficiency.  20 C.F.R. § 404.1520b(c).  However, if "despite efforts to obtain additional

evidence, the evidence is insufficient to determine whether [a claimant is] disabled, [the agency] will make a determination or decision based on the evidence [it] has." 20 C.F.R. § 404.1520b(d).

Here, the ALJ obtained all the medical evidence beginning 12 months prior to Plaintiff's September 2009 alleged onset of disability.  [*See* AR Doc. # 10-2, 21]; *see also* 20 C.F.R. § 404.1512(d) (noting that it is the agency's responsibility to obtain medical evidence 12 months before Plaintiff's alleged onset of disability). This included treatment notes from Dr. Laub and Dr. Polanco.  Plaintiff does not allege that there are any additional treatment records from the relevant time period.  The ALJ considered both of these opinions in his determination, noting that Plaintiff's treating sources pointed out Plaintiff's exaggerated complaints of pain and lacking identifiable sources of pain.  Additionally, although Plaintiff did not claim disability based on a mental impairment, because he complained of some psychological problems and there were not psychological treatment or examination records in evidence, the agency attempted to send Plaintiff to a psychological consultative examination, which was not attended by Plaintiff. [*Id.* at 10-3].  Thus, after trying unsuccessfully to further develop the record and resolve the insufficiency, the ALJ made a decision based on the evidence it had as directed by 20 C.F.R. §404.1520b(c)-(d).

Plaintiff contends that there was no medical evidence in the record regarding Plaintiffs functional capacity to perform work and the ALJ's reliance on a state agency decision-maker's functional assessment of Plaintiff was improper.  However, a claimant's RFC assessment is an administrative finding that can be dispositive and it is within the province of the ALJ to make based on the entire record.  *See* 20 C.F.R. § 404.1527(d) (noting that opinions about a claimant's residual functional capacity is on an issue reserved to the Commissioner and is entitled to no

special significance).  Additionally, the ALJ's RFC finding demonstrates that the ALJ did not

rely solely on the state agency decision-maker's assessment because the ALJ imposed

restrictions beyond those found by the state agency decision-maker.

Accordingly, I find that the ALJ sufficiently developed the record.

**B.    ALJ's RFC Assessment & Determination that he Could Perform his Past Relevant Work**

Plaintiff next alleges that the ALJ erred in his RFC determination at phase one of Step

Four by failing to include in the RFC assessment any limitations related to Plaintiff's cervical

and lumbar spine impairments and mental impairments.  Plaintiff also contends that this

improper RFC determination corrupted the ALJ's findings at the third phase regarding Plaintiff's

ability to perform his past relevant work ("PRW").

At Step Four, the ALJ engages in "a comparative assessment of the claimant's [RFC] and

the demands of the work the claimant has done in the past to determine whether the claimant can

do his [PRW]."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).  In *Winfrey*, this court

articulated the three phases the ALJ must address to make the Step Four determination:

> Step Four of the sequential analysis . . . is comprised of three phases.  In the first
> phase, the ALJ must evaluate a claimant's physical and mental residual functional
> capacity (RFC), . . . and in the second phase, he must determine the physical and
> mental demands of the claimant's past relevant work . . . In the final phase, the
> ALJ determines whether the claimant has the ability to meet the job demands
> found in phase two despite the mental and/or physical limitations found in phase
> one . . . At each of these phases, the ALJ must make specific findings.

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (alterations in original) (citations

omitted) (internal quotation marks omitted).  Specific findings are required at all phases.  *Id.*  At

Step Four the burden of proving disability remains with the claimant.  *Henrie v. U.S. Dep't*

*Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993).  However, the ALJ does have a duty "of inquiry and factual development."  *Id.*

Regarding the first phase, an ALJ should "assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] [RFC] for work activity on a regular and continuing basis."  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (alterations in original) (internal quotation marks omitted).   RFC represents "the most [that the claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  To determine a claimant's RFC, the ALJ must consider any medical opinions about what the claimant can still do as well as the claimant's own testimony concerning his limitations, including limitations resulting from pain. *Id.* § 404.1545(a)(3).

At phase one, the ALJ determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR § 404.1567(b) and 416.967(b) except that he should be allowed to alternate from sitting to standing, as needed; there would be no climbing of ladders, ropes or scaffolds and occasional climbing of stairs and ramps, stooping, kneeling, crouching and crawling; there should be occasional over the shoulder, or overhead, reaching, not to exceed the light exertional range; he should avoid concentrated exposure to cold, vibration and unprotected heights.

[AR Doc # 10-2, 25].  In reaching these conclusions, the ALJ stated that his RFC assessment was "well supported by and consistent with the record as a whole, showing no more than range of motion changes and muscle stiffness and tenderness, though the [ALJ] is persuaded that additional restrictions are needed to adequately address the claimant's physical symptoms."  [*Id.* at 27].  I agree that the record supports this conclusion.

In imposing the restrictions he did, the ALJ noted that no more rigorous restrictions were warranted because of "the lack of compelling objective evidence or consistent clinical findings of physical impairment, his conservative care, and the indication of symptom magnification." [*Id*. at 28. Specifically, he noted that the minimal lumber and cervical issues reported by examining physicians were no more than occasional and were rarely accompanied by reports of a reduced range of motion. [*Id.* at 27-28]. He emphasized that while Plaintiff made complaints of extreme pain, all medical reports consistently documented a normal gait, excellent strength, no neurological deficits, some range of motion restrictions and muscle stiffness or tenderness, and no radicular findings. [*Id.*] He also noted that during the relevant period, Plaintiff has managed his symptoms conservatively with only stretching and Vicodin, and there are no indications he is considered a surgical candidate. [*Id.* at 27]. The ALJ also noted that Plaintiff did not report any side effects from his medications nor any suggestion in the record that Plaintiff should avoid certain types of activities. [*Id.*]

Plaintiff's reports of his daily activities also supports the ALJ's limitations. [*Id.* at 25]. Plaintiff provided that during the relevant time period he had been employed as a technical support person for the X-Box and worked from home approximately four hours a day. [*Id.*] Plaintiff provided that he was able to maintain attention throughout his work, with breaks when he stood and stretched for a few minutes. [*Id.*] Plaintiff also provided that he lived with his fiancé and her four year old daughter, that he helped look after the child, maintained a driver's license and drove weekly. [*Id.*] He said that he went shopping, watched movies, and was able to play games online. [*Id.*] Additionally, in providing his restrictions the ALJ noted that the lack of compelling objective evidence or consistent clinical findings of physical impairment,

Plaintiff's conservative care, and the indication that Plaintiff frequently magnified his symptoms. Thus, the ALJ's analysis of this phase was sufficient.

At phase two of the *Winfrey* analysis, the ALJ must examine the demands of the claimant's PRW. *Winfrey*, 92 F.3d at 1023. As the ALJ determined that Plaintiff could return to his previous work as an accounts receivable clerk, I look only at the requirements of that position. The Plaintiff and a VE testified before the ALJ as to the Plaintiff's PRW. [AR Doc # 10-2, 31-52]. Plaintiff testified as to his various positions. [*Id.* at 37-46]. Most recently, he provided that he worked from home as a technical support person for X-Box. [*Id.*] At this position, Plaintiff provided that he sat and could concentrate for four hour shifts with intermittent breaks lasting 2-3 minutes. [*Id.*] When he worked as a scorekeeper, Plaintiff explained that he worked a two to four hour shift in which he would sit in a booth at a score machine to keep score of games. [*Id.* at 42].

The ALJ provided applicable restrictions in a hypothetical, from which the VE concluded that Plaintiff could perform his PRW as an accounts receivable clerk. [*Id.* at 48-51]. According to the Dictionary of Occupational Titles, an accounts receivable clerk position may include activity such as: calculating, posting, and verifying duties to obtain financial data for use in maintaining accounting records; compiling and sorting documents, such as invoices and checks; substantiating business transactions; verifying and posting details of business transactions, such as funds received and disbursed, and totals accounts, using calculator or computer; computing and recording charges, refunds, cost of lost or damaged goods, freight charges, rentals, and similar items; typing vouchers, invoices, checks, account statements, reports, and other records, using typewriter or computer; or reconciling bank statements. *See* DOT 216.482-010. It is

undisputed that Plaintiff performed the job of accounts receivable clerk at a sedentary exertion level with a skill level of 5.  [*Id*. at 28]; 20 C.F.R. § 404.1567.  Thus, the ALJ's properly examined Plaintiff's PRW.

In the third phase of the *Winfrey* analysis, the ALJ must determine whether the claimant can meet the job demands of his PRW despite his limitations as found in phase one.  *Winfrey*, 92 F.3d at 1023.  Plaintiff contends that the ALJ failed at this step because he did not include alleged mental limitations on concentration.  [*See* Doc. # 15, 18-20].  However, Plaintiff does not contest the ALJ's credibility determination that Plaintiff's complaints were exaggerated and not supported by objective evidence.  As such, this determination will not be discussed further.  Instead, the ALJ concluded that Plaintiff could perform his PRW as an accounts receivable clerk.  [AR Doc # 10-2, 28-30].  The ALJ explained that "[i]n comparing the claimants [RFC] with the physical and mental demands of this work, the [ALJ] [found] that the claimant was able to perform the position as generally performed."  [*Id*. at 28].  The ALJ explained that, "the [VE]'s testimony is consistent with the information contained in the DOT, although the [ALJ] has also relied upon his extensive experience in vocational evaluation, job placement, and job site evaluation."  [*Id.*]

After examination of the record, I find that the record supports the ALJ's phase three conclusion.  Plaintiff's physical restrictions would not preclude Plaintiff from performing his past work as an accounts receivable clerk.  In fact, such a position would be well-suited for someone with the Plaintiff's limitations, as identified by the ALJ in phase one.  Additionally, as discussed above, any mental restrictions were not found credible.

Accordingly, I hold that the ALJ did not err in assessing Plaintiff's RFC.  Furthermore, substantial evidence in the record as a whole supports the ALJ's determinations.  Alternatively, the ALJ found that Plaintiff could perform other jobs in the national economy under step five.

**C.      ALJ's Step Five Analysis**

At Step Five of the sequential evaluation procedure the ALJ must decide whether the claimant can perform any other gainful and substantial work that exists in the national economy. 20 C.F.R. § 404.1520(g).  The Commissioner has the burden at Step Five of showing that the claimant is capable of performing such work.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). This determination is made on the basis of the claimant's age, education, work experience, and RFC.  20 C.F.R. § 404.1520(g)(1); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

Plaintiff argues that the ALJ erred in Step Five of the disability analysis by improperly relying on the vocational expert's ("VE") testimony.  Specifically, Plaintiff contends that the VE's testimony regarding the jobs Plaintiff could perform was inconsistent with Plaintiff's RFC. Plaintiff also argues that the VE's testimony was inconsistent with the occupational information supplied by the Dictionary of Occupational Titles ("DOT").

**1.      VE' testimony & Plaintiff's RFC**

SSR 00-4p states that before relying on VE evidence to support a disability determination or decision, an ALJ must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by vocational experts and information in the Dictionary of Occupational Titles ("DOT") (including its companion publication, the Selected Characteristics

of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)), and explain in the decision how any conflict that has been identified was resolved.  2000 WL 1898704 at *1.  In making disability determinations, the Commissioner will rely primarily on the DOT for information about the requirements of work.  Occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a decision about whether a claimant is disabled.  At the hearing level, as part of the ALJ's duty to fully develop the record, the ALJ will inquire, on the record, as to whether or not there is such consistency.  If a conflict exists, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information.  2000 WL 1898704 at *2.

Here, the VE identified three jobs that plaintiff could perform given the RFC findings of the ALJ.  [*See* AR Doc. # 10-2, 29].  The ALJ adopted the opinions of the VE in finding that Plaintiff could perform other work that exists in significant numbers in the national economy. [*Id.* at 28-30]

The ALJ's RFC findings for Plaintiff stated that Plaintiff needed to be limited to work with the following limitations:

> [Plaintiff] be allowed to alternate from sitting to standing, as needed; there would be no climbing of ladders, ropes or scaffolds and occasional climbing of stairs and ramps, stooping, kneeling, crouching and crawling; there should be occasional over the shoulder, or overhead, reaching, not to exceed the light exertional range; he should avoid concentrated exposure to cold, vibration and unprotected heights.

[*Id.* at 25].  Plaintiff argues that at least one of the jobs, if not all three jobs identified require

activity outside of the ALJ's defined limitations.  I disagree.

The VE testified that with the limitations set forth by the ALJ, Plaintiff could perform the

following positions: ticket taker; cashier (gas bar island); and cashier (convenience store).  [*Id.*]

The DOT describes the position of ticket taker as follows:

> Collects admission tickets and passes from patrons at entertainment events:
> Examines ticket or pass to verify authenticity, using criteria such as color and date
> issued. Refuses admittance to patrons without ticket or pass, or who are
> undesirable for reasons, such as intoxication or improper attire. May direct
> patrons to their seats. May distribute door checks to patrons temporarily leaving
> establishment. May count and record number of tickets collected. May issue and
> collect completed release forms for hazardous events, and photograph patron with
> release form for permanent records file. May be designated Gate Attendant
> (amuse. & rec.) or Turnstile Attendant (amuse. & rec.) when collecting tickets at
> open-air event.

DOT 344.667-010.  The DOT describes the position of cashier (gas bar island) as follows:

> Receives cash from customers or employees in payment for goods or services and
> records amounts received: Recomputes or computes bill, itemized lists, and
> tickets showing amount due, using adding machine or cash register. Makes
> change, cashes checks, and issues receipts or tickets to customers. Records
> amounts received and prepares reports of transactions. Reads and records totals
> shown on cash register tape and verifies against cash on hand. May be required to
> know value and features of items for which money is received. May give cash
> refunds or issue credit memorandums to customers for returned merchandise.
> May operate ticket-dispensing machine. May operate cash register with peripheral
> electronic data processing equipment by passing individual price coded items
> across electronic scanner to record price, compile printed list, and display cost of
> customer purchase, tax, and rebates on monitor screen. May sell candy, cigarettes,
> gum, and gift certificates, and issue trading stamps. May be designated according
> to nature of establishment as Cafeteria Cashier (hotel & rest.); Cashier, Parking
> Lot (automotive ser.); Dining-Room Cashier (hotel & rest.); Service-Bar Cashier
> (hotel & rest.); Store Cashier (clerical); or according to type of account as
> Cashier, Credit (clerical); Cashier, Payments Received (clerical). May press
> numeric keys of computer corresponding to gasoline pump to reset meter on
> pump and to record amount of sale and be designated Cashier, Self-Service
> Gasoline (automotive ser.). May receive money, make change, and cash checks

18

for sales personnel on same floor and be designated Floor Cashier (clerical). May make change for patrons at places of amusement other than gambling establishments and be designated Change-Booth Cashier (amuse. & rec.).

DOT 211.462-010.  The DOT describes the position of cashier (convenience store) as follows:

Performs any combination of following duties to provide customer service in self-service store: Aids customers in locating merchandise. Answers questions from and provides information to customer about merchandise for sale. Obtains merchandise from stockroom when merchandise is not on floor. Arranges stock on shelves or racks in sales area. Directs or escorts customer to fitting or dressing rooms or to cashier. Keeps merchandise in order. Marks or tickets merchandise. Inventories stock.

DOT 299.677-010.

Plaintiff argues that these three positions involve activities prohibited by the ALJ's RFC limitation on alternating from sitting to standing as needed, and limitation of occasional climbing of stairs and ramps.  [*See* Doc. # 15, 20-21].  Specifically, Plaintiff alleges that the following activities are prohibited by the ALJ's RFC: the ticket taker's description provides that performance of the position "may" including directing patrons to their seats, which Plaintiff contends is a "duty that can not only involve long periods of standing but also climbing stairs" (Doc. # 15, 21); and that it is unclear whether the cashier positions are compatible with the ALJ's sitting and standing limitations.  [*Id.*]  However, none of the position descriptions are inconsistent with the ALJ's restrictions.  Per the ALJ's restrictions, Plaintiff is permitted to walk and stand and occasionally climb stairs.  Further, providing that the position "may" require such movement does not mean it is a necessary component of the position.  In sum, the activities Plaintiff alleges are prohibited by the ALJ's RFC are not actually prohibited.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Hackett*, 395 F.3d at 1173; *White*, 287 F.3d at 905, 908, 909.  The ALJ can rely

on the testimony of the VE which is based on his professional experience.  *Rogers v. Astrue*, 2009 WL 368386 at *4 (10th Cir., Feb.17, 2009).  Here, the VE testified that the Plaintiff could perform these jobs given the RFC findings of the ALJ, including the limitations that Plaintiff should be permitted to alternate from sitting to standing and could occasionally climb stairs and/or ramps.  Plaintiff does not point to any actual evidence indicating the contrary.  In the absence of any evidence that these jobs require activity prohibited by the ALJ's RFC, I find no error in the ALJ's reliance on the VE testimony that Plaintiff can perform the jobs identified in light of all the limitations set forth by the ALJ.

**2.      VE's Testimony & the DOT**

Plaintiff also argues that the VE's testimony was inconsistent with the DOT, but does not allege any actual inconsistency.  Plaintiff merely contends that the testimony was inconsistent but does not point to any actual inconsistency.  Thus, I find that the ALJ did not err by relying on the VE's statement that his testimony was consistent with the DOT.  *See Rogers v. Astrue*, 2009 WL 368386 at *4 (10th Cir., Feb.17, 2009) (explaining that the ALJ can rely on the testimony of the VE which is based on his professional experience).

Accordingly, I find that the ALJ's Step 5 determination was proper.

## VII.  CONCLUSION

For the foregoing reasons, I AFFIRM the Commissioner's final order.

Dated: September __9__, 2014, in Denver, Colorado.

BY THE COURT

s/Lewis T. Babcock

LEWIS T. BABCOCK, JUDGE